GEORGIA RAILROAD *et. al. vs.* SMITH *et al.*, Railroad Commissioners, *et al.*

[This case was argued at the last term, and the decision reserved.]

1. The object of the constitutional provision conferring power upon the legislature to regulate railroad freights and passenger tariffs, to prevent unjust discrimination and require reasonable and just freights and tariffs, and making it the duty of the legislature to pass laws in furtherance of this provision, was to give proper protection to the citizens against unjust rates for the transportation of freights and passengers over the railroads of the state, and to prevent unjust discrimination, even though the rates might be just. It was not expected that the legislature should do more than pass laws to accomplish the ends in view. Nor were they required to enter into the details of settling freights and tariffs over all the railroads in the state. The railroad commissioners are officers appointed to carry into execution the laws passed by the legislature, and are constitutional officers.

(*a.*) The powers of the railroad commissioners are not legislative. The power to adopt rules and regulations to carry into effect a law already passed, differs from a power to enact the law.

2. Acts of incorporation granting exclusive privileges to the corporators are always to be strictly construed, and whatever is not expressly given therein, or not necessarily implied therefrom, is withheld.

(*a.*) The 12th section of the charter of the Georgia Railroad and Banking Company was as follows: "That the said Georgia Railroad Company shall, at all times, have the exclusive right of transportation or conveyance of persons, merchandise and produce over the railroad and railroads to be by them constructed, while they see fit to exercise the exclusive right; provided that the charge of transportation or conveyance shall not exceed fifty cents per hundred pounds on heavy articles, and ten cents per cubic foot on articles of measurement, for every hundred miles, and five cents per mile for every passenger":

*Held,* that the exclusive right granted by this section, was the right of transportation or conveyance of persons, merchandise and pro-

duce over the railroad and railroads to be by them constructed. The state did not contract with the company to guarantee to it the exclusive right to charge the maximum rates named.

HALL, J., *dubitante* as to last point.

February 27, 1883.

Railroads. Constitutional Law. Officers. Charters. Corporations. Before Judge SIMMONS. Fulton County. At Chambers. May 26, 1882.

Reported in the decision.

J. B. CUMMING; A. R. LAWTON, for plaintiffs in error.

CLIFFORD ANDERSON, attorney general; MYNATT & HOW-ELL, for defendants.

CRAWFORD, Justice.

The Georgia Railroad and Banking Company, denying the power of the railroad commission of the state of Georgia to regulate freight and passenger tariffs over its road, has filed this bill that the right of the said commission to exercise this power may be judicially determined. This power is denied:

(1.) Because, by article 4, section 2, par. 1, of the constitution of Georgia, the duty is imposed on the general assembly to regulate freight and passenger tariffs.

(2.) Because the act of October 14, 1879, is unconstitutional and void, as being an attempt to delegate legislative powers to said railroad commission. And because it is in conflict with the constitution of Georgia, which forbids the imposing of excessive fines, or inflicting unusual punishments.

(3.) Because the charter of said company is a contract between the state and the company, by which the company has the right to charge any rates of freight and passenger tariffs not exceeding those limited by its charter; whereas, the said commission, under the authority given it

by the act of October 14, 1879, forbids the said company, under heavy penalties, from charging the rates allowed by said contract. Wherefore the said act is, by virtue of par. 1, section 10, article 1, of the constitution of the United States, which prohibits the states from passing any law impairing the obligations of a contract, unconstitutional, null and void.

The prayer of the bill is: (1.) That the act of October 14, 1879, be declared null and void. (2.) That it be declared inoperative against the Georgia Railroad and Banking Company. (3.) That the said commission be perpetually enjoined from prescribing rates of fare and freight over the Georgia Railroad and its branches, or in any manner enforcing against it the provisions of the said act of October 14, 1879. (4.) For general relief.

The chancellor below, after considering the bill and exhibits of complainant, and cross-bill and exhibits of defendants, refused the injunction prayed for, and that refusal is assigned as error.

The questions to be determined by this litigation are:

(1.) Whether the act establishing the railroad commission of the state of Georgia, with its powers and duties, is not unconstitutional and void, because it is the duty of the legislature, under the constitution, to regulate freights and passenger tariffs, and this act seeks to delegate this power to the said commission.

(2.) Whether the said act, in so far as it attempts to interfere with the chartered rights of the Georgia Railroad and Banking Company, does not violate that clause of the constitution of the United States which prohibits the states from passing laws impairing the obligation of contracts.

1. The constitution of 1877 confers upon the legislature the power and authority of regulating railroad freight and passenger tariffs, preventing unjust discriminations, and requiring reasonable and just rates of freight and passenger tariffs. It further makes it the duty of the legislature to pass laws, from time to time, to carry into effect

this constitutional provision, and to enforce the same by adequate penalties.

For this purpose and to this end was the act under consideration passed. It declares, among other things, substantially that, if any railroad doing business in this state, shall charge, collect, demand, or receive, more than a fair and reasonable toll or compensation for the transportation of passengers or freight of any description, or for the use and transportation of any railroad car upon its track, the same shall be deemed guilty of extortion, and upon conviction, dealt with as by the said act provided.

In order that fair and reasonable tolls, or compensation for the transportation of passengers and freight, might be certainly had, it was also provided that there should be three railroad commissioners appointed, whose duty it should be to make reasonable and just rates of freight and passenger tariffs, to be observed by all the railroad companies doing business in the state on the railroads thereof. And that a schedule of such rates should be made for each railroad doing business in the state, which said schedule should be deemed and taken in all the courts of the state as sufficient evidence that the rates were just and reasonable charges for the transportation of passengers and freights and cars upon the railroads, in all cases brought against any road involving unjust discriminations or improper charges. Adequate penalties were likewise provided for the enforcement of the rules and regulations of the said commission for the establishing of reasonable and just rates to be observed by the railroad companies.

Thus it appears that the constitution provided that the legislature should have power to regulate the railroad freights and passenger tariffs, and to require reasonable and just rates for both; that it made it also the duty of the legislature to pass laws necessary for its execution; and that, in pursuance of that duty, the law complained of was passed.

The object of the constitutional provision and the legis-

lative enactment was to give proper protection to the citizen against unjust rates for the transportation of freights and passengers over the railroads of the state, and to prevent unjust discriminations, even though the rates might be just. It was not expected that the legislature should do more than pass laws to accomplish the ends in view. When this was done, its duty had been discharged. All laws are carried into execution by means of officers appointed for that purpose; some with more, others with less, but all must be clothed with power sufficient for the effectual execution of the law to be enforced. Legislative grants of power to the officers of the law to make rules and regulations which are to have the force and effect of laws, are by no means uncommon in the history of our legislation. I need only mention the power given to the judges of the supreme and superior courts of this state to establish rules which, if not in conflict with the constitution of the United States, of this state, or the laws thereof, are binding and must be obeyed. And it has never been claimed that they were unconstitutional because they had not been passed by the legislature and read three times, and on three separate days, in each house of the general assembly.

The act of October 14, 1879, provides that fair and reasonable rates only shall be charged by the railroads of the state. Did the constitutional convention, by paragraph 1, section 2, article 4, intend more than the passage of a general law, such as this, to carry into effect the clause here referred to? It certainly was not contemplated that the details of rates to be fixed over the many miles of railway in the state, should be settled and determined by the legislature. The many influences that combine to cause changes in the ever varying vicissitudes of trade and travel were neither overlooked nor forgotten by that body. The utter impossibility of preparing by the legislature just and proper schedules for the various railroads, with their differences of length, locality and business, appears to us to be

so clear and manifest as that to have entertained it would have been absolutely absurd. And especially so, when it is remembered that schedules just and right, where arranged for the months of winter, might be ruinously unjust and wrong for the months of summer; or that such as were proper for the year of the meeting of the general assembly might the succeeding year well nigh bankrupt every railroad corporation in the state.

In our judgment, the act creating the railroad commission is not unconstitutional and void. That it may need amendments is most probable; indeed, an experiment so new and untried would be exceptional if it were perfect in its very inception. The difference between the power to pass a law and the power to adopt rules and regulations to carry into effect a law already passed, is apparent and strikingly great, and this we understand to be the distinction recognized by all the courts as the true rule in determining whether or not in such cases a legislative power is granted. The former would be unconstitutional, whilst the latter would not. 91 Ill. Rep., 357; Tilly *vs.* Savannah, Florida and Western Railroad Company, and cases cited. (Circuit Court U. S. Southern District of Ga. Woods, J.) See pam. dec. Supreme Court of Georgia, September 1880; 94 U. S. Rep., 113, 155, 164.

2. The next question made by the record is, whether the act of October 14, 1879, violates the chartered rights of the stockholders of the Georgia Railroad & Banking Company, as contained in the 12th section of the act of incorporation. That clause is as follows:

"That the said Georgia Railroad Company shall at all times have the exclusive right of transportation or conveyance of persons, merchandise and produce, over the railroad and railroads to be by them constructed, while they see fit to exercise the exclusive right: Provided, that the charge of transportation or conveyance shall not exceed fifty cents per hundred pounds on heavy articles, and ten cents per cubic foot on articles of measurement, for every one hundred miles, and five cents per mile for every passenger: Provided always, that the said Company may, when they see fit, rent or farm out all or

v 70–45

any part of their said exclusive right of transportation or conveyance of persons on the railroad or railroads, with the privilege to any individual, or individuals, or other company, and for such term as may be agreed upon, subject to the rates above mentioned." Acts of 1833, page 262.

It is well settled that the charters of incorporated companies granting exclusive privileges to the corporators are always to be strictly construed, and that whatever is not expressly given therein, or not necessarily implied therefrom, is withheld. In support of this rule of law, we quote from the case of Commonwealth *vs.* Erie and Northeast Railroad Company, 27 Pa. St. Rep., 339. Black, Chief Justice, in rendering the judgment of the court, said:

" That which a company is authorized to do by its act of incorporation it may do ; beyond that all its acts are illegal. And the power must be given in plain words or by necessary implication. All powers not given in this direct and unmistakable manner are withheld. * * In such cases ingenuity has nothing to work with, since nothing can be either proved or disproved by logic or inferential reasoning. If you assert that a corporation had certain privileges, show us the words of the legislature conferring them. Failing in this, you must give up your claim, for nothing else can possibly avail you. A doubtful charter does not exist; because, whatever is doubtful is decisively certain against the corporation."

And again is the rule clearly and forcibly stated in the case of Fertilizer Company *vs.* Hyde Park, 97 U. S., 659. Swayne, Justice, said: "The rule of construction in this class of cases is that it shall be construed most strongly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms, or by an implication equally clear. The affirmative must be shown. Silence is negation, and doubt is fatal to the claim. This doctrine is vital to the public welfare. It is axiomatic in the jurisprudence of this court."

Guided by these authorities, let us see whether the 12th

section of this charter can stand the test prescribed and give to the company what it claims. It was incorporated "to construct a rail or turnpike road," and after providing for its organization, conferring upon it the right to cross the public roads, and bridge the rivers and water courses, and giving it the right of way, etc., the act then proceeds to declare the special rights to be enjoyed. These were, that the company should "at all times have the exclusive right of transportation or conveyance of persons, merchandise and produce over the railroad and railroads to be by them constructed, while they see fit to exercise the exclusive right."

The exclusive right here granted was to be enjoyed only upon one condition, and that was, that the company should not charge more than fifty cents per hundred pounds per hundred miles on heavy freight, and five cents a mile for every passenger transported over the road. The legislature was dealing with the subject-matter of a public highway, and public highways had theretofore been open to the free use of all persons for travel, for the transportation of goods, and the conveyance of passengers, without the payment of tolls or charges. To deny the use of a public highway to the people at large, and give it to an incorporated company, for its exclusive use to convey passengers and freights, was deemed an extraordinary privilege; and this extraordinary privilege the legislature agreed to grant to this company, provided it would not charge more than the above rates. Or to put it in the form of contract, it was agreed by the state that this company might build the road, and so long as it carried freight and passengers as prescribed by its charter, it should not in anywise be used by the public, but by the company exclusively.

Under no reasonable construction of this charter can it be claimed that the state contracted with this company to guarantee to it the exclusive right to charge the full amount of the maximum rates, or indeed any rate, so long as it did not exceed them. It can only be construed to mean, that so long as the specified maximum of rates was not

exceeded, the company or its lessee should have the exclusive right to carry freights and passengers over the road. This seems to us to be the unquestionable meaning of the words used, but even if this be doubtful, "whatever is doubtful is decisively certain against the corporation."

Besides, we hardly think it will be denied that the state has the power to regulate the rates of freight and passenger fare upon railroads, unless that right has been clearly parted with in granting their charters. Indeed, the words of the charter parting with this right by the state, must amount to a positive contract. In the case of the Charles River Bridge Co. *vs.* Warren Bridge Co. *et al.*, 11 Pet., 544, C. J. Taney, in pronouncing the judgment of the court, said, that it was "necessary to show that the legislature contracted not to do the act of which complaint is made. * * The inquiry then is, does the charter contain such a contract on the part of the state? Is there any such stipulation to be found in the instrument? * * * If a contract on that subject can be gathered from the charter, it must be by implication, and cannot be found in the words. Can such an agreement be implied? The rule of construction before stated is an answer to the question. In charters of this description no rights are taken from the public, or given to the corporation, beyond those which the words of the charter, by their natural and proper construction, purport to convey. There are no words which import such a contract, and none can be implied." See also 49 *Ga.*, 151; 50 *Id.*, 620; 40 Eng. C. L., 298, 319; 42 *Id.*, 496; 46 *Id.*, 234–5.

Applying these rules of law to the charter under consideration, can it be said that there is a clear contract, either expressed or necessarily implied, that the company shall have the absolute right to regulate its freights and fares, and that the state will guarantee to them that right up to the maximum sums named in the charter? Such a contract cannot be found in the words, and "in charters of this description no rights are to be taken from the public, or

given to a corporation, beyond those which the words of the charter, by their natural and proper construction, purport to convey."

The natural and proper construction of the words used is that the state stipulates, upon certain terms, not to interfere with the company's exclusive right of transportation.   This was all.   It is nowhere stipulated not to interfere with its rates.   And, to bind the state, it must be shown that she contracted with the company that it would not thus interfere.   Let us inquire, then, how does the act complained of deprive the railroad of its exclusive right to convey passengers or freight?   By what paragraph therein is the road opened to the public?   The answers are obvious; there is not a line to be found in it that deprives the corporators of the exclusive use of the road as against everybody.   Hence the learned and able counsel for the railroad, to maintain their position, were compelled, in their construction, to insist that the word exclusive, in the 12th section of the charter, should be stricken out, or at least that no special significance should be given to it.   Where, we ask, is there authority in any court, when construing the grant of chartered law and power to a corporation, to strike out or weaken the force of any word whatever, so as to enlarge the meaning, or cover what it would not cover if it remained therein?   We know of no such authority, and none such has been, or can be, shown for this.

It is claimed by the company that the proviso makes the contract between it and the state.   But before this can be construed into a contract such as is contended for, it would be necessary to insert words therein which are not used, and to make that a covenant in which no words of covenant appear.   The construction contended for is, we think, unauthorized and violative of the rules as to what constitutes the usual office of a proviso.   See 15 Peters, 423; 1 Barn. & Add., 99; Comyn's Dig., " Condition " (A 2), vol. 3; Coke on Littleton, 203 (b); Bouvier's L. Dic., " Proviso," 399.

It may not be out of place, in concluding this opinion, to say that, whilst we hold the act of October 14, 1879, constitutional, and the orders of the commissioners valid and binding, yet we are not to be understood as holding that their powers are unlimited or beyond legal control by the proper authorities of the state. On the contrary, we hold that the powers which have been conferred upon them are to be exercised within legal and constitutional limitations, and in such way as not to invade the legal and constitutional rights of others. If, therefore, the case made by the complainant against the commissioners, had shown a violation of the chartered rights of the company, it would have been the duty of this court, by proper order and decree, to have restrained and enjoined them from such violation. All grants of power are to be exercised only in conformity to the constitutions of the state and federal governments and the laws passed in pursuance thereof.

Judgment affirmed.

HALL, Justice, stated that he concurred in the judgment of the court, but could not concur with the other members thereof fully in construing section 12 of the charter of the Georgia Railroad, and would, therefore, concur *dubitante* as to the last point. He preferred not to dissent, as the case would, under the announcement of counsel, be carried to the Supreme Court of the United States, and he considered it better to have the questions reviewed on the judgment of a full bench.