34871. HARRISON COMPANY v. CODE REVISION
COMMISSION et al.
34872. MICHIE COMPANY v. HARRISON
COMPANY et al.
34873. HARRISON COMPANY v. CODE REVISION
COMMISSION et al.
34903. CODE REVISION COMMISSION et al. v.
HARRISON COMPANY et al.

HILL, Justice

The Harrison Company, publishers of numerous Georgia legal materials including the unofficial Code of Georgia Annotated, brought this lawsuit to challenge the validity and constitutionality of Resolution 447 of the 1978 session of the Georgia General Assembly continuing the Code Revision Commission (Ga. L. 1978, p. 230), and the contract for Code revision between that Commission

and the Michie Company, another publisher of numerous legal materials. Among other things, Resolution 447 authorized the Commission "to select a publisher to conduct revision of the Code and laws of Georgia."

A Code Revision Commission was created in 1976 (Ga. L. 1976, p. 739). A second Code Revision Commission was commissioned in 1977 with power to select and contract with a publisher (Ga. L. 1977, p. 922). The Commission was made a continuing body in 1978 pending revision of the Code and completion of the publishing contract (Ga. L. 1978, p. 230).

After hearing presentations of several publishers and after receiving estimates from them (the Harrison Company's estimate was just under $500,000), the Commission in 1978 contracted with the Michie Company for $950,000 to "codify, revise and annotate, index, print, bind and deliver according to the directions of the Commission pursuant to the provisions of this agreement 500 sets of a revised and recodified Code of Georgia, which shall be designated 'Official Code of Georgia Annotated.'" The contract specifies that the statutory portion of the proposed revised Code will be submitted to the 1981 legislative session. It specifies further that statutes which have been held unconstitutional or have been repealed by implication or have become obsolete or duplicitous will be identified to the Commission.

The contract provides that all decisions of the appellate courts of Georgia plus applicable federal cases construing state law and federal and state constitutions shall be annotated. Case names, dates and complete citations will be given. Court decisions rendered obsolete by subsequent statutory or constitutional changes will be identified for the reader. Opinions of the Attorney General and relevant law review articles will be included, as will references to American Jurisprudence, Corpus Juris Secundum, American Law Reports and Uniform Laws Annotated. Annotations will be captioned, arranged and catchlined. Cross references and legislative history, including English common law and statutes, will be included.

Indexes shall be revised and updated, with references to repealed laws being deleted, and shall be

based upon reader use as well as headings used by the legislature. "Double jump" cross references are to be avoided. Provisions are made for conversion tables, numbering system, printing and binding, as well as computer tapes.

The finished product, including constitutions, appellate court rules, annotations, indexes, tables, and notes are to be known as the "Official Code of Georgia Annotated," on which the state shall own the copyright. For its work, the publisher is to be paid $950,000 by the state. The publisher is to furnish the state 500 copies of the recodified Code and is given the exclusive right (excluding computer rights) to distribute and sell this Code for 10 years, at a beginning price of $450 per set plus a price index increase. During the 10-year period, annual supplements shall be ready for delivery within 90 days after the Governor approves the last bill and the price for annual supplements shall be fixed by the Commission.

Harrison named as defendants the Commission, its individual members, and the Michie Company. The original six count complaint was filed on June 16, 1978, when Harrison learned of the Commission's intention to contract with Michie. After the contract was entered into, Harrison amended its complaint and added eight additional counts.

Harrison moved for summary judgment on Counts 4, 5, 7, 8 and 10-14 of its complaint. The defendants moved for summary judgment on all counts. The trial court denied Harrison's motion for summary judgment and granted defendants' as to Counts 1-5, 7, 8 and 11-14, denying summary judgment to the defendants on Counts 6, 9 and 10. Applications for interlocutory appeals by all parties were granted by this court; additionally, Harrison filed a direct appeal. All appeals have been consolidated and the entire case is before this court for disposition. The trial court's rulings on Counts 1, 2 and 3 of the complaint, however, have not been appealed by Harrison and need not be considered. We will consider Counts 4-14 in sequence, without regard to who is appealing each ruling.

1. In Count 4 of its complaint, Harrison alleges that awarding the contract without competitive bidding violates Code Ann. § 40-1910 and that the contract

will establish a monopoly in Georgia in violation of the constitutional prohibition against monopolies, Ga. Const. Art. III, Sec. VIII, Par. VIII (Code Ann. § 2-1409).[1] Code Ann. § 40-1910 provides for competitive bidding for "all contracts for the purchase of supplies, materials or equipment made under the provisions of this Chapter . . . wherever possible . . ." The General Assembly is not subject to "the provisions of this Chapter." Code Ann. § 102-109 provides that the state is not subject to a law unless named therein or the intent that it be included be clear and unmistakable. By the same token, the General Assembly, including its committees, commissions and offices, is not subject to a law unless named therein or the intent that it be included be clear and unmistakable. See *Coggin v. Davey,* 233 Ga. 407 (II) (211 SE2d 708) (1975). Moreover, although the state will get some paper in the 500 Code sets received, the bulk of the contract involves publishing services and not "supplies, materials or equipment" within the meaning of Code Ann. § 40-1910.

The second claim in Count 4 is that the contract will tend to create a monopoly. There are two aspects to this claim. One is that the state's purchase of the Code from Michie, as provided for in the contract, tends to create a monopoly because it gives Michie a subsidy and a substantial competitive advantage. This, however, clearly does not tend to create a monopoly within the constitutional prohibition. If it did, many purchases by the state would be subject to the same challenge.[2]

The second aspect of Harrison's claim that the contract tends to create a monopoly revolves around the

---

[1]Additionally, Harrison argues that Code Ann. § 89-914 also requires competitive bidding. That section provides that "No member of any state board, bureau, commission or other State agency . . . shall make any contract in any capacity whatsoever to furnish any goods or supplies, or both, to the State, except after competitive bid thereon." That section clearly applies to sales by such officers and sellers (including their agents, dealers and brokers) and is irrelevant in this case.

[2]Harrison argues in this context that the state is

clause in the contract which grants to Michie "the exclusive right to distribute and sell sets and volumes of the Code for a 10 year period extending from the date of the initial publication of the Code, as well as the exclusive right to publish annual supplements and periodic replacement volumes to the Code for the same 10 year period . . ." The exclusive right referred to is the exclusive right to publish the "Official Code of Georgia Annotated," the copyright for which will be in the name of the state. Both Michie and the state, however, correctly concede that this provision does not prevent Harrison from publishing a competitive product; i.e., a Code with annotations by Harrison. As was said in Davidson v. Wheelock, 27 F 61 (D. Minn. 1866), a state's laws are public records open to inspection, digesting and compiling by anyone. Michie is not being given an exclusive franchise as to the publication of laws in Georgia. Thus the contract does not bar Harrison from the market, as was the case in *Macon Ambulance Service, Inc. v. Snow Properties, Inc.,* 218 Ga. 262 (2) (127 SE2d 598) (1962). Nor does the contract show an intent to drive plaintiff out of business and thereby create a monopoly as was alleged in *Blackmon v. Gulf Life Ins. Co.,* 179 Ga. 343 (1) (175 SE 798) (1933). The trial court did not err in granting summary judgment to all defendants on Count 4.

2. In Count 5, Harrison alleges that the composition of the Commission violates the separation of powers provision in the Georgia Constitution. Ga. Const. Art. I, Sec. II, Par. IV (Code Ann. § 2-204). The Commission, pursuant to Resolution 447, was comprised of ten legislators (including the Lt. Governor) and five members of the State Bar; of the five State Bar members, one was a superior court judge and one was a district attorney. Harrison argues that the Commission's function was

---

paying Michie substantially more than it would have paid Harrison under its offer and thereby is subsidizing the sale of the Code by Michie to other purchasers, and that this aspect of the contract tends to create a monopoly. In our view, this allegation relates to Count 9 of Harrison's complaint, discussed in Division 6, infra.

executive and that therefore the appointment of ten legislators and two members of the judiciary (the judge and the district attorney) was unconstitutional, relying on *Greer v. State of Ga.,* 233 Ga. 667 (212 SE2d 836) (1975) (George L. Smith II World Congress Center Authority) and *Murphy v. State,* 233 Ga. 681 (212 SE2d 839) (1975) (State Properties Commission). In our view, however, the work of the Commission; i.e., selecting a publisher and contracting for and supervising the codification of the laws enacted by the General Assembly, including court interpretations thereof, is within the sphere of legislative authority. Lawyers are not barred from legislative service by reason of their being officers of the courts. Thus the only members of the Commission subject to challenge on this basis are the judge and the district attorney.[3] Assuming for the purpose of this decision that these two officers cannot serve as representatives of the State Bar despite their affiliation with a non-legislative branch, the remaining members constituted a quorum which accomplished the purposes of Resolution 447. *Greer,* supra, 233 Ga. at 670-671. The trial court did not err in granting summary judgment to all defendants on Count 5.

3. In Count 6, Harrison merely reserved its rights to amend the original complaint. The trial court denied summary judgment as to the defendants as to Count 6. Michie argues that its motion for summary judgment should have been granted. Plaintiff did not, and indeed could not, by anything said in Count 6, enlarge its right to amend under Code Ann. § 81A-115. Since the disposition

---

[3]As heretofore noted, the publisher is to identify to the Commission laws which have been held invalid, are duplicitous or obsolete, or have been repealed by implication. However, sole and final approval of the proposed Code (prior to its submission to the General Assembly) rests with the Commission. It is therefore possible that a question to be decided by the Commission could be decided by the vote of one or more non-legislative members.

of amendments is controlled by that Code section rather than any alleged reservation of the right to amend, the trial court did not err in denying the defendants' motions for summary judgment on Count 6 so long as Harrison is permitted by Code Ann. § 81A-115 to amend its complaint (see Division 2).

4. In Count 7, Harrison alleges that the actions of the Commission in entering into the contract for an annotated Code were ultra vires since its only authority under the resolution was to conduct revision of the Code and laws of Georgia with no authority to contract for an *annotated* Code or for the preparation of annotations. Resolution 447 authorizes the Commission "to select a publisher to conduct revision of the Code and the laws of Georgia. The Commission is authorized to formulate with the publisher all the details associated with the project and to contract with the publisher, such contract being contingent upon the General Assembly appropriating the necessary funds therefor. The Commission is hereby empowered and it shall be its duty to take such action as is necessary to effectuate Code revision." (Ga. L. 1978, p. 230). Harrison urges upon this court a narrow construction of the authorization in this Resolution. We decline to so limit it for two reasons.

First, we reject Harrison's contention that "revision of the Code" does not permit preparation of an annotated Code. The evidence showed, and we take judicial notice of the fact, that "Code" is more frequently used by lawyers in referring to the Code of Georgia Annotated currently published by Harrison which is cited throughout this opinion. Consequently, the Commission may have believed that preparation of annotations was among its implied powers as action "necessary to effectuate Code revision." The second reason is that if the General Assembly did not intend to authorize a contract for an *annotated* Code, it can simply refuse to fund the contract (Ga. L. 1978, p. 230). We note, in this context, that the inclusion of annotations in an "official" Code will not, of course, give the annotations any official weight. See *Oxford v. Generator Exchange, Inc.,* 99 Ga. App. 290, 292 (108 SE2d 174) (1959). The trial court did not err in granting summary judgment to all the defendants on

Count 7.

5. In Count 8 Harrison alleges that the purchase of 500 sets of the completed official Code was not authorized by the Resolution. Again, we do not construe the Resolution so narrowly. The Commission's authority to contract with the publisher includes the authority to contract for the purchase of the Code for state use as one of the details associated with the project. And, again, the General Assembly has the authority to disapprove the contract. The trial court did not err in granting summary judgment for the defendants on Count 8.

6. Count 9 alleges that the Commission abused its discretion and wasted state funds by spending approximately twice as much as the next lowest estimate (its own). Harrison complains that the Commission's investigations were inadequate, its procedures were deficient, its communications deceptive, its meetings informal and its reasons for selecting Michie insufficient. Harrison contends further that the Commission ignored its "free Code offer" and that the contract amounts to a subsidy. The trial court found that these questions present jury issues and denied defendants' motions for summary judgment as to Count 9. We find in this case that the trial court should have granted the defendants' motion for summary judgment on Count 9. Under Resolution 447, the General Assembly retained the power to review the contract before it determines whether to appropriate the necessary funds (Ga. L. 1978, p. 230). The contract is contingent on this appropriation. Thus the General Assembly reserved the right to review the actions of the Commission and to determine whether the Commission abused its discretion or agreed to too high a price. Since the Commission acted under authority delegated by the General Assembly, the General Assembly is the proper arbiter of whether the Commission abused its discretion or acted in accordance with its authority. Furthermore, the defendants are entitled to summary judgment on the allegation that the Commission has wasted public funds in entering into the contract because the Commission, having no authority to fund the contract, was powerless to waste public funds in doing so. The order of the trial court is reversed with

direction that summary judgment be granted to the defendants on Count 9.

7. The defendants' motions for summary judgment on Count 10 were also denied. In Count 10, Harrison alleges that the contract violated Code Ann. §§ 40-1903 and 40-1920. Those Code sections require that the Department of Administrative Services (DOAS) give preference to Georgia products, labor, and sellers. Laws applicable to DOAS are not applicable to the General Assembly (see Division 1, above). Harrison also cites Code Ann. § 40-1954, which requires that state and local authorities give preference to Georgia products. The Commission is not a state authority within the meaning of that Act and thus that statute is also inapplicable. The trial court is directed to enter summary judgment for the defendants on Count 10.

8. In Count 11, Harrison alleges that Resolution 447 contains no guidelines for the Commission to follow in implementing the legislation (i.e., in formulating the contract) and is therefore an unconstitutional delegation of the legislative powers of the General Assembly. Harrison relies on a number of decisions of this court, including *Georgia R. v. Smith,* 70 Ga. 694 (1883). We agree that the General Assembly cannot confer on any person or body the power to enact law (as opposed to rules and regulations). *Ga. R. v. Smith,* supra; *Bohannon v. Duncan,* 185 Ga. 840 (196 SE 897) (1938). But we cannot agree that the decisions relied upon are relevant in this instance. Here there is no illegal delegation of legislative authority because a contract authorized by the General Assembly is not a law and the General Assembly has retained complete control over the contract and its terms by making it contingent on approval by the General Assembly of an appropriation. (Ga. L. 1978, p. 230). The trial court did not err in granting summary judgment for all defendants on Count 11.

9. In Count 12, Harrison alleges that the payment of $950,000 to Michie called for by the contract plus the free use of the copyrighted material for 10 years contemplated by the contract constitutes an illegal and unconstitutional gratuity in violation of Art. III, Sec. VII, Par. XII of the Georgia Constitution (Code Ann. §

2-1413). The alleged "gratuities" are, of course, the consideration provided by the contract to be paid by the state for the publishing services to be performed by Michie under the terms of the contract. They are not gratuities. See *Thompson v. Municipal Electric Auth.*, 238 Ga. 19 (9) (231 SE2d 720) (1976). The trial court did not err in granting summary judgment for the defendants on Count 12.

10. In Counts 13 and 14, Harrison alleges that Resolution 447 is a special law in conflict with a general law, Code Ann. § 40-1901 et seq. We have already determined that there is no conflict between Resolution 447 and those provisions of Code Ann. § 40-1901 et seq. relied on by Harrison, which provide that DOAS contract for state printing and that contracts for the purchase of supplies, materials or equipment be based on competitive bids. See Divisions 1 and 7, supra. The trial court did not err in granting summary judgment to all defendants on Counts 13 and 14.

11. In view of our decision that the trial court correctly entered summary judgment for the defendants on Counts 4, 5, 7, 8 and 11-14, and our direction to the trial court to enter summary judgment for the defendants on Counts 9 and 10, it is unnecessary to discuss the affirmative defenses raised by the defendants. Counts 1, 2 and 3 not being appealed, there is nothing pending to amend (see Division 3), *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601 (203 SE2d 173) (1974), and the trial court is directed to enter summary judgment as to all counts in favor of the defendants.

*Judgment affirmed in No. 34871. Judgment reversed in No. 34872. Judgment affirmed in No. 34873. Judgment reversed in No. 34903. All the Justices concur.*

ARGUED MAY 15, 1979 — DECIDED SEPTEMBER 7, 1979 — REHEARING DENIED SEPTEMBER 26, 1979.

*Davis, Matthews & Quigley, Baxter L. Davis, William M. Matthews,* for appellant (Case No. 34871).

*Hansell, Post, Brandon & Dorsey, David J. Bailey, Arthur K. Bolton, Attorney General, Jefferson J. Davis,*

*Assistant Attorney General,* for appellees (Case No. 34871).

*Gary W. Hatch, David J. Bailey,* for appellant (Case No. 34872).

*Baxter L. Davis, Arthur K. Bolton, Attorney General, Jefferson J. Davis, Assistant Attorney General,* for appellees (Case No. 34872).

*Baxter L. Davis,* for appellant (Case No. 34873).

*David J. Bailey, Arthur K. Bolton, Attorney General, Jefferson J. Davis, Assistant Attorney General,* for appellees (Case No. 34873).

*Arthur K. Bolton, Attorney General, Jefferson J. Davis, Assistant Attorney General,* for appellants (Case No. 34903).

*Baxter L. Davis, David J. Bailey,* for appellees (Case No. 34903).

ON MOTION FOR REHEARING.

Resolution 447 authorized the Commission to select a publisher and provided in pertinent part as follows: "The Commission is authorized to formulate with the publisher all the details associated with the project and to contract with the publisher, such contract being contingent upon the General Assembly appropriating the necessary funds therefor." Ga. L. 1978, p. 230. The Resolution became effective February 13, 1978, and the contract was executed June 19, 1978.

The prior indefinite appropriation of funds "for Code revision" effective January 23, 1978 (Ga. L. 1978, pp. 10, 12, 186) did not satisfy the subsequent contingency requirement of Resolution 447.

*Motion for rehearing denied. All the Justices concur, except Jordan, J., who dissents. Undercofler, P. J., would deny the Motion for Rehearing but dissents from the addendum On Motion for Rehearing.*

UNDERCOFLER, Presiding Justice, dissenting from the addendum.

The 1978 Supplemental Appropriations Act (Ga. L. 1978, pp. 10, 12), provided the General Assembly funds for its operation including "for Code Revision." In my opinion the General Assembly is the arbiter of whether this satisfied its Resolution 447.