**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P.J., and GOSS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 2, 2019**

# In the Court of Appeals of Georgia

A19A0076. INSTITUTE FOR JUSTICE v. REILLY et al.

McMILLIAN, Presiding Judge.

This appeal challenges a trial court order dismissing a complaint which alleged that various state legislative offices violated Georgia's Open Records Act, OCGA § 50-18-70 et seq. (the "Act"). The trial court dismissed the complaint for failure to state a claim. Because the General Assembly and its offices are not subject to the provisions of the Act, as construed by our Supreme Court, we affirm the order of dismissal.

In reviewing a trial court's ruling on a motion to dismiss, "[o]ur role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of

provable facts." (Citations and punctuation omitted.) *Handberry v. Stuckey Timberland, Inc.*, 345 Ga. App. 191, 191 (812 SE2d 547) (2018). So construed, the complaint alleged that the Institute for Justice (the "Institute"), a nonprofit public interest law firm, requested records from several Georgia legislative staff offices about a 2012 statute regulating the practice of music therapy. The offices – including the Office of the Clerk of the House of Representatives, the Office of the Secretary of the Senate, the House Budget and Research Office, the Senate Budget and Evaluation Office, the Senate Research Office, and the Office of Legislative Counsel – refused the requests, asserting that the General Assembly and its staff offices are exempt from disclosing records under the Act.

The Institute filed suit against the heads of those offices in their official capacities, seeking declaratory and injunctive relief requiring the state offices to provide the requested records.[1] The defendants moved to dismiss the complaint for failure to state a claim. After a hearing, the trial court granted the motions to dismiss, finding that the General Assembly and its offices are not subject to the Open Records

---

[1]The complaint originally included the Secretary of State as a defendant, but after a settlement agreement between the Secretary of State and the Institute, the claims against the Secretary of State were dismissed.

2

Act. The trial court also found that as to the Office of Legislative Counsel, the records requested are specifically exempt from disclosure. The Institute appeals.[2]

1. In its current form, Georgia's Open Records Act provides: "All public records shall be open for personal inspection and copying, except those which by order of a court of this state or by law are specifically exempted from disclosure." OCGA § 50-18-71 (a). The Act further provides: "Agencies shall produce for inspection all records responsive to a request within a reasonable amount of time not to exceed three business days of receipt of a request[.]" OCGA § 50-18-71 (b) (1) (A). And if any part of the requested records are withheld from disclosure, "the agency shall notify the requester of the specific legal authority exempting the requested record or records from disclosure by Code section, subsection, and paragraph within a reasonable amount of time not to exceed three business days[.]" OCGA § 50-18-71 (d). As used in the Act, the term "'[a]gency' shall have the same

[2] In their appellate brief, the Appellees maintain that the trial court was correct in its decision as stated, but also assert that the dismissal order should be affirmed under the right for any reason rule based upon the political question doctrine and legislative immunity and privilege. Because the trial court did not address these issues and we otherwise affirm the dismissal, we decline to address these issues in the first instance. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002) ("In such cases, the more efficient course would be for the appellate court to follow the 'right for any reason' rule and consider grounds not addressed by the trial court, *if it finds that the trial court's legal analysis is flawed*.") (emphasis added).

3

meaning as in Code Section 50-14-1[.]" OCGA § 50-18-70 (b) (1). That code section, which is part of the Open Meetings Act, defines the term "agency" as meaning: "Every state department, agency, board, bureau, office, commission, public corporation, and authority[.]" OCGA § 50-14-1 (a) (1) (A).

The Institute maintains that the trial court erred in dismissing its complaint because, under the plain language of the Act, it applies to all state "offices," including the offices of the General Assembly. "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. Thus if the language of the statute is plain and unambiguous, we simply apply the statute as written." (Citations and punctuation omitted.) *CPF Investments, LLLP v. Fulton County Bd. of Assessors*, 330 Ga. App. 744, 746 (769 SE2d 159) (2015). See also OCGA § 1-3-1 (b) (directing the application of ordinary signification to all words in statutes). However, we are also bound to construe the text of a statute in the appropriate context and in a manner consistent with how the text has previously been construed. Our Supreme Court has recently reiterated this principle:

> As we have said many times before when interpreting legal text, we do not read words in isolation, but rather in context. The primary determinant of a text's meaning is its context, which includes the structure and history of the text and the broader context in which that

4

text was enacted, including statutory and decisional law that forms the legal background of the written text.

(Citations and punctuation omitted.) *City of Guyton v. Barrow*, __ Ga. __, __ (3) (Case No. S18G0944, decided on May 20, 2019).

With these principles in mind, we turn to the Act's legal background, including the Supreme Court's decision in *Coggin v. Davey*, 233 Ga. 407, 410-11 (II) (211 SE2d 708) (1975). At the time *Coggin* was decided, Georgia's "Sunshine Law," as it was then known,[3] provided:

> All meetings of any *state department, agency, board, bureau, commission or political subdivision* . . . at which official actions are to be taken are hereby declared to be public meetings and shall be open to the public at all times. No resolution, rule, regulation or formal action shall be binding except as taken or made at such meeting. Any action contesting a resolution, rule, regulation or formal action on the ground of noncompliance with this law must be commenced within ninety days of the date of the resolution, rule or regulation was passed or the formal action was taken.

---

[3] Following its enactment in 1972, the Sunshine Law was amended several times, and by 1988, it evolved into the Open Records Act, codified at OCGA § 50-18-70 et seq., and the Open Meetings Act, codified at OCGA § 50-14-1, et seq. See D. Voyles, *Open Meetings: Revise Law*, 5 GA. ST. U.L. REV. 475, 477-78 (1988) (outlining amendments to Georgia's Sunshine Law between 1972 and 1988).

(Punctuation omitted; emphasis added.) 233 Ga. at 407. In construing the language of this statute, the Supreme Court found that, although "the statute is applicable to the departments, agencies, boards, bureaus, *etc.* of this state and its political subdivisions[,] . . . [i]t is *not* applicable to the General Assembly." (Emphasis added.) Id. at 411 (II) (reasoning that, as a separate branch of the government with the power to adopt and enforce its own rules regarding its internal operations, the General Assembly was not included in the Sunshine Law).

In 2012, the General Assembly undertook a comprehensive revision of both the Open Records Act and Open Meetings Act. See Anna Adams & Lisa Scatamacchia, *State Government: Open and Public Meetings*, 29 GA. ST. U.L. REV. 139, 145-52 (2012) (summary of numerous amendments made to multiple statutes within each Act). However, nowhere in this comprehensive overhaul did the General Assembly plainly identify itself as now subject to either Act. As explained by our Supreme Court, "the General Assembly, including its committees, commissions *and offices*, is not subject to a law unless named therein or the intent that it be included be clear and unmistakable." (Emphasis added.) *Harrison Co. v. Code Revision Commission*, 244 Ga. 325, 328 (1) (260 SE2d 30) (1979).

6

The Institute nonetheless argues that the addition of the word "office" to the list of state divisions somehow brings the offices of the General Assembly within the scope of the Open Records and Open Meeting Acts, upending more than forty years of precedent. However, our Supreme Court previously found that nearly identical language did *not* include the General Assembly. *Coggin*, 233 Ga. at 411 (II). Thus, when appropriately considering the text of the current Act within the "history of the text and the broader context in which that text was enacted, including statutory and decisional law," *Barrow*, __ Ga. at __ (3), the mere addition of the word "office" cannot be read in context and in light of *Coggin* to make offices within the General Assembly subject to the Act. See *Harrison Co.*, 244 Ga. at 328 (1).

Nor is the enactment of OCGA § 28-4-3.1, as the Institute argues, evidence of the General Assembly's intent to make the Open Records Act applicable to the General Assembly. This statute provides, in whole:

> Communications between the Office of Legislative Counsel and the following persons shall be privileged and confidential: members of the General Assembly, the Lieutenant Governor, and persons acting on behalf of such public officers; and such communications, and records and work product relating to such communications, shall not be subject to inspection or disclosure under Article 4 of Chapter 18 of Title 50 or any other law or under judicial process; provided, however, that this

7

privilege shall not apply where it is waived by the affected public officer or officers. The privilege established under this Code section is in addition to any other constitutional, statutory, or common law privilege.

OCGA § 28-4-3.1.

First, this statute – which expressly states that it operates in addition to other protections – applies to both records *and* communications that would not otherwise fall within the Open Records Act. Second, the statute applies, inter alia, to communications with the Lieutenant Governor, a member of the *executive* branch.[4] Thus, the Institute's assertion that this statute would be rendered "mere surplusage" if the Office of Legislative Counsel were already exempt from the Open Records Act is incorrect.

And finally, we note that the Institute's reading of the Act would encompass not only the many offices at issue here – the Office of the Clerk of the House of Representatives, the Office of the Secretary of the Senate, the House Budget and Research Office, the Senate Budget and Evaluation Office, the Senate Research Office, and the Office of Legislative Counsel – but also a myriad of other offices and

---

[4] See *DeKalb County School District v. Ga. State Bd. of Education*, 294 Ga. 349, 362 (1) (b) (ii) (751 SE2d 827) (2013) (noting Lieutenant Governor is an executive officer).

departments under the General Assembly, including the offices of the individual members, the Office of the Speaker of the House of Representatives, the Fiscal Office, the Department of Human Resources, and the Information Technology Office. Such an expansive reading would allow the exception to swallow the rule that the General Assembly is not subject to the Act. Cf. *Ga. Dept. of Natural Resources v. Center for Sustainable Coast, Inc.*, 294 Ga. 593, 600 (2) (755 SE2d 184) (2014) (warning against judicial creation of exceptions to sovereign immunity where the exceptions would swallow the rule permitting only the General Assembly to do so). Accordingly, we affirm the trial court's dismissal of the complaint.

2. Based on our holding in Division 1, we need not reach the Institute's remaining enumeration of error.

*Judgment affirmed. Goss, J., concurs fully and specially. McFadden, C.J., dissents.\**

*\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2 (a).*

A19A0076.  INSTITUTE FOR JUSTICE v. REILLY et al.


GOSS, Judge, concurring fully and specially.

I join fully in the majority opinion, but write separately to emphasize that longstanding Georgia law requires us to affirm. First, the addition of the term "office" to OCGA § 50-18-70 (b) (1), which defines the "agencies" to which the Open Records Act applies, does nothing to vitiate the applicability here of *Coggin v. Davey*, 233 Ga. 407 (211 SE2d 708) (1975), which held that the Act's predecessor "[was] not applicable to the General Assembly." Id. at 411 (II). Second, and as the Supreme Court of Georgia emphasized in 1979, the General Assembly "is not subject to a law unless named therein or the intent that it be included be clear and unmistakable." *Harrison Co. v. Code Revision Comm'n.*, 244 Ga. 325, 328 (1) (260 SE2d 30) (1979). If the General Assembly had wanted to include itself in the set of departments, agencies, or offices subject to the Act, it could have done so expressly. Because it has not done so, the trial court did not err when it dismissed this complaint.

A19A0076. INSTITUTE FOR JUSTICE v. REILLY et al.

McFADDEN, Chief Judge, dissenting.

The question before us is whether "every state office" means every state office. The majority holds that it does not. So I respectfully dissent.

The majority compounds its error by addressing a question not before us. Appellant does not contend that the General Assembly itself is subject to the Open Records Act, only its offices. Open Records Act imposes a duty to produce records upon "agencies." OCGA § 50-18-71 (b) (1) (A). "Agencies" is a defined term. The Open Records Act incorporates the definition of "agency" set out in the Open Meetings Act. OCGA § 50-18-70 (b) (1). Under that definition, "agency" means, in pertinent part, "*Every state* department, agency, board, bureau, *office*, commission, public corporation, and authority[.]" OCGA § 50-14-1 (a) (1) (A) (emphasis added). So the question before us, stated more precisely, is whether "every state office" includes legislative offices. I would hold the answer to be self evident. It does.

The majority finds a warrant to hold otherwise in two decisions handed down by our Supreme Court in the 1970s, *Harrison Co. v. Code Revision Commission*, 244 Ga. 325 (260 SE2d 30) (1979) and *Coggin v. Davey*, 233 Ga. 407 (211 SE2d 708) (1975).

3

*Harrison* discussed a codified rule of statutory construction, which is now at OCGA § 1-3-8. Under § 1-3-8, "The state is not bound by the passage of a law unless it is named therein or unless the words of the law are so plain, clear, and unmistakable as to leave no doubt as to the intention of the General Assembly." Citing *Coggin*, to which I'll turn shortly, *Harrison* expanded on that statutory language and held: "By the same token, the General Assembly, including its committees, commissions and offices, is not subject to a law unless named therein or the intent that it be included be clear and unmistakable." *Harrison*, 244 Ga. at 328 (1).

I would hold that the words "every state office" are "clear and unmistakable" on their face.

But if we need other guides to help us discern the meaning of those words, we have them. In the Open Records Act itself the General Assembly directed that it be broadly construed to allow access to government records.

> The General Assembly finds and declares that *the strong public policy of this state is in favor of open government*; that open government is essential to a free, open, and democratic society; and that public access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions. The General Assembly further finds and declares that there is a strong presumption that public records should be made available for public inspection without delay. *This article shall be broadly construed to*

4

*allow the inspection of governmental records.* The exceptions set forth in this article, together with any other exception located elsewhere in the Code, shall be interpreted narrowly to exclude only those portions of records addressed by such exception.

OCGA § 50-18-70 (a) (emphasis added). "[C]ourts should always strive to give effect to the purpose and intent of the legislature, and this is particularly true in the instant case, where we have a specific admonition by the General Assembly to construe [the Open Records Act broadly]." *Schick v. Bd. of Regents of the Univ. Sys. of Ga.*, 334 Ga. App. 425, 434 (1) (779 SE2d 452) (2015) (citations and punctuation omitted). The majority's narrow reading of the Act to prohibit inspection of the records requested from state offices "contravenes the legislative intent as expressed in the Act that it should be construed in favor of, not against, disclosure." Id. (footnote omitted).

More broadly, "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. Thus if the language of the statute is plain and unambiguous, we simply apply the statute as written." *CPF Investments, LLLP v. Fulton Bd. of Assessors*, 330 Ga. App. 744, 746 (769 SE2d 159) (2015) (citations and punctuation omitted). See also OCGA § 1-3-1 (b) (directing the application of ordinary signification to all words in statutes). Moreover, as used in the Georgia Code, "defined words shall have the meanings

5

specified, unless the context in which the word or term is used clearly requires that a different meaning be used." OCGA § 1-3-2.

The majority also relies heavily on *Coggin*, supra. But the issue in that case was "the applicability of Georgia's 'Sunshine Law' to the General Assembly and its committees." *Coggin*, 233 Ga. 407. The Sunshine Law was the predecessor to the statutes before us today, the Open Records Act and the Open Meetings Act. But the issue before us today is the applicability of the current version of the Open Records Act to legislative offices. And the statutory language extending that Act to every state office was enacted in 2012, long after *Coggin* was handed down. See editor's notes on the 2012 amendment to OCGA § 50-14-1 (a) (1).

There is no language in the Open Records Act extending it to the General Assembly itself. The majority would elide the distinction between legislative offices and the General Assembly itself. But state offices do not compose the General Assembly. See generally Ga. Const. of 1983, Art. III, Sec. I, Par. I & Art. III, Sec. II, Pars. I-V & Art. III, Sec. VI, Par. I (General Assembly consists of the Senate and House of Representatives, which are composed of their elected members, who have the power to make all laws for the welfare of the state); OCGA § 28-1-1 (describing membership of General Assembly). See also OCGA §§ 28-3-20 (Secretary of the

6

Senate and Clerk of the House of Representatives and their terms of office); 28-4-3 (creating Office of Legislative Counsel); 28-5-6 (authorizing establishment of Senate Budget and Evaluation Office and House Budget and Research Office).

Also unsupportable is the majority's invocation — in reliance on dicta in *Coggin* — of the General Assembly's rule making authority. "[T]he statement in the [*Coggin*] majority opinion that either the House or the Senate can pass an internal operating rule for its own procedures in conflict with a general law enacted by both bodies and signed by the Governor . . . is dictum and not necessary to a decision in this case." *Coggin*, 233 Ga. at 411 (Ingram and Hall, JJ., concurring specially).

That the already clear and unmistakable meaning of "every state office" encompasses legislative offices is rendered crystalline by OCGA § 28-4-3.1. Under that provision communications between the Office of Legislative Counsel and specified persons, including members of the General Assembly, "shall not be subject to inspection or disclosure under Article 4 of Chapter 18 of Title 50 [the Open Records Act] or any other law or under judicial process[.]" By construing the Open Records Act to be inapplicable to legislative offices — including the Office of Legislative Counsel — the majority reduces that statutory language to meaningless surplusage. "As a fundamental principle of statutory construction, we endeavor to

7

give each part of the statute meaning and avoid constructions that make some language mere surplusage or meaningless." *Schick*, supra. at 432 (1). It is of no consequence that the majority opinion leaves unaffected other portions of OCGA § 28-4-3.1.

There is, of course, no separation of powers problem when the General Assembly legislates about itself or its offices. The General Assembly has the authority decide whether to subject itself or its offices to the Open Records Act. The clear and unmistakable language of the statutes before us does subject legislative offices to the Act. So we should reverse.