**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2453. WARNER v. HOBBY LOBBY STORES, INC.

BRANCH, Judge.

After she was injured by merchandise falling from a shelf in a Gwinnett County Hobby Lobby store, Dawn Evette Warner filed the current action against Hobby Lobby Stores, Inc., alleging that her injuries resulted from the store's negligence in failing to properly install, inspect, or stock its shelving units. She now appeals from an order granting summary judgment against her and in favor of Hobby Lobby, arguing that there exists a genuine issue of fact as to whether Hobby Lobby had actual or constructive knowledge of the hazardous condition that caused her injuries. We disagree and affirm.

To prevail on a motion for summary judgment

the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law. When a defendant moves for summary judgment as to an element of the case for which the plaintiff, and not the defendant, will bear the burden of proof at trial the defendant may show that [it] is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element. And if the defendant does so, the plaintiff cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citation and punctuation omitted.) *Beale v. O'Shea*, 319 Ga. App. 1, 2 (735 SE2d 29) (2012). On an appeal from the grant or denial of a motion for summary judgment, we review the record de novo, construing the evidence in the light most favorable to the non-movant. *Samuels v. CBOCS, Inc.*, ___ Ga. App. ___ (734 SE2d 758) (2012).

Construed in the light most favorable to Warner, as the non-movant, the record shows that on September 24, 2008, Warner was shopping in a local Hobby Lobby. While in the store, Warner decided to look at some "white boards," also known as dry-erase boards, that were on sale. The white boards were located on an end cap, which is a display unit located at the end of an aisle. This particular end cap was made of peg

2

board, and the white boards rested inside a set of curved brackets mounted on the peg board. The brackets were attached to either end of a long piece of metal ("the bracket piece"), and welded to the back of each bracket was a flat metal piece, referred to as the bracket joint. The joints attached to the peg board, holding the brackets and the bracket piece in place.

Warner decided to purchase a white board, and so she reached with both hands and took hold of the board closest to her. Warner testified that as she began to lift the board out of the brackets, the "shelving gave way," and all five of the white boards in the brackets fell towards her and onto the floor. As the boards fell, the one in Warner's hands came forward and hit her head and then her legs; two other boards fell and hit her hands. As a result of the incident, Warner suffered a fracture of, and other injuries to, her left hand.

A Hobby Lobby employee, later identified as Valerie Hopkins,[1] came to Warner's assistance. Warner testified at her deposition that Hopkins inspected the brackets immediately after the incident and told Warner that the brackets were misaligned, because the two bracket joints had not been placed in peg holes that were

---

[1] Hopkins was not deposed in this action, apparently because she had left Hobby Lobby's employ and could not be located.

on the same level; rather, one bracket joint was situated in a peg hole that was located one peg hole above the opposite bracket joint. Warner further stated that both she and Hopkins could see that the left bracket joint had separated from the bracket itself, and that the joint was rusted.

In response to questions, Warner stated that before she reached for the white board she stood in front of the end cap and looked at the price, which was posted on one of the brackets. At that time, all of the white boards in the brackets were standing straight up and were perpendicular to the floor, and there did not appear to be anything wrong with either the peg board or the brackets.

Wendy Cochran was the store manger at the time of the incident and was still the store manager in September, 2011, when she was deposed. Cochran testified that the store's shelving, including all brackets that held merchandise, are inspected regularly. She explained that all brackets were inspected before being installed on an end cap, and any that appeared damaged, worn, or otherwise not in good working condition were thrown away. After installation, all brackets were inspected at least once a week. Specifically, Cochran testified that all brackets were inspected every Monday, when store employees counted merchandise to determine what, if any, replacement stock needed to be ordered. Additionally, brackets would be inspected

4

again as merchandise was restocked, and white boards were restocked every week, as they were a popular product. According to Cochran, the brackets at issue would have been inspected only hours before the incident involving Warner, which occurred at around lunchtime on a Wednesday. She knew this because the store received deliveries of new stock every Wednesday morning, and employees restocked the shelves on those mornings, before the store opened. Cochran also explained that because of the way in which the bracket had broken (by separating from the joint), the break would have been visible to anyone who passed by the left side of the end cap. And because this end cap was located across from the stock room, she it had passed it a number of times on the day of the incident.

Additionally, Cochran stated that the broken bracket was not rusted and that the brackets were not misaligned. She also testified that there had not been any other incidents at the store involving brackets or shelving breaking or involving items falling from shelves or brackets.

Immediately after the incident, Cochran took the bracket piece (which contained the broken bracket) to her office, where she kept it until she gave it to the lawyer for Hobby Lobby. The bracket piece was produced for inspection at Cochran's deposition, and she testified that it was in the same condition as it was on the day of the accident.

Following the close of discovery, Hobby Lobby moved for summary judgment on the grounds that the store had no superior knowledge of any dangerous condition that existed on its premises. The trial court held a hearing on that motion, at which time it inspected the bracket piece. At that hearing, Warner's attorney acknowledged that the broken bracket on the bracket piece in the custody of Hobby Lobby's attorney was "not rusted. It looks like the weld has popped." But he argued that because there were no pictures of the bracket piece taken immediately after the incident, there was no way of telling whether the bracket piece produced at Ms. Cochran's deposition and at the hearing was, in fact, the bracket piece involved in Ms. Warner's injury.

The trial court granted Hobby Lobby's motion for summary judgment, and this appeal followed.

To prevail in a premises liability action, a plaintiff must show: (i) the existence of a defective or hazardous condition on the premises; (ii) that the defendant had either actual or constructive knowledge of this condition; and (iii) that the plaintiff had no knowledge of the condition, despite the exercise of ordinary care. See *Mucyo v. Publix Super Markets*, 301 Ga. App. 599, 600 (688 SE2d 372) (2009); *Cook v. Home Depot*, 214 Ga. App. 133, 134 (1) (447 SE2d 35) (1994). In this appeal, we must determine if the evidence raises a genuine issue of fact as to (i) whether the misaligned

6

brackets constituted a hazardous or dangerous condition in the Hobby Lobby Store, or (ii) whether Hobby Lobby had constructive knowledge of the defective bracket. We find that it does not.

1. Warner first argues that there is some evidence showing that Hobby Lobby had *actual* knowledge of a hazard, because the brackets holding the white boards were "misaligned." Given that Hobby Lobby employees installed the brackets in this fashion, Warner reasons, the store knew of the hazard created by the misalignment. Even assuming that the store did have actual knowledge of the misaligned brackets, however, that knowledge would not allow Warner's claim to survive summary judgment. This is because Warner has failed to show that the misaligned brackets constituted a dangerous condition.

Warner has introduced no "evidence which affords a reasonable basis for the conclusion that" the slight misalignment of the bracket joints caused the left bracket joint to break, thereby causing her injuries. (Citation, punctuation and footnote omitted.) *Hardnett v. Silvey*, 285 Ga. App. 424, 426 (646 S.E.2d 514) (2007). No witness testified, for example, that as a matter of physics or engineering, a misaligned set of brackets would make the brackets more likely to break. Nor did anyone testify that, in their experience, misaligned brackets were more prone to break. And the mere

7

possibility that the misalignment may have caused or contributed to the break is not enough to allow Warner to survive summary judgment on her claim. When the question of whether the allegedly dangerous condition caused the plaintiff's injuries "remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant." (Citation, punctuation and footnote omitted.) Id. See also *Young v. Richards Homes, Inc.*, 271 Ga. App. 382, 383 (2) (b) (609 SE2d 729) (2005) (even assuming that staircase constructed by defendant and from which plaintiff fell was defective, defendant was nevertheless entitled to summary judgment in the absence of evidence showing "some plausible causal connection between the staircase's defects and [plaintiff's] fall") (citation omitted). Accordingly, Warner has failed to present evidence sufficient to support an inference that the misalignment of the brackets caused or contributed to the breaking of the left bracket.

2. Warner also contends that there was some evidence in the record sufficient to create a question of fact as to whether Hobby Lobby had constructive knowledge of the inherent danger posed by the left bracket itself. We disagree.

In cases such as this, constructive knowledge may be shown by evidence demonstrating that an employee of the proprietor was in the immediate area of the

hazard and could have easily seen it, *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 250 (699 SE2d 439) (2010); that the hazard had been present long enough that the proprietor could have discovered it through a reasonable inspection procedure, *CFUS Properties v. Thornton*, 246 Ga. App. 75, 76 (1) (539 SE2d 571) (2000); or that there had been prior incidents, similar to the one that injured the plaintiff, sufficient to provide the proprietor with constructive knowledge of the danger. *Sams v. Wal-Mart Stores*, 228 Ga. App. 314, 315 (491 SE2d 517) (1997). No such circumstances exist in this case.

The record shows that even if the broken bracket joint existed prior to Warner's encounter with the bracket, the break was not readily apparent. Warner did not see any problem with the bracket despite looking directly at the display before reaching for a white board. Furthermore, if the bracket was broken before the incident, the evidence shows that it could not have been broken long enough that Hobby Lobby should have discovered it. The testimony established that this particular break would have been visible from the side of the end cap, and the store manager had passed that side of the end cap several times that day and had not seen it. The evidence also established that Hobby Lobby had a reasonable inspection procedure, in that the brackets holding the white boards were inspected at least twice a week. And when the

brackets were inspected that morning, the break was not present. Finally, the evidence showed that there had been no similar incidents in the store prior to Warner's injury.

Despite the foregoing, Warner contends that her testimony that the broken bracket was rusted creates a factual issue as to whether Hobby Lobby had constructive knowledge of the hazard. This argument, however, ignores the evidence showing that the bracket at issue was not rusted. Moreover, Warner's claim that it is possible that the bracket piece produced by Cochran is not the same one involved in Warner's injuries is speculative, at best. Cochran testified that immediately after the incident she took custody of the bracket piece; that she later transferred custody of that item to the attorney for Hobby Lobby; and that the bracket piece produced for inspection at her deposition was the same item she had given to the attorney, and it was in the same condition as it was immediately following Warner's accident. Additionally, there is no evidence in the record showing that Warner asked to inspect the bracket piece or that any inspection by her led her to conclude that the item was not the same bracket piece involved in her injury. Accordingly, Warner failed to show that the broken bracket joint in question was rusted, and the trial court did not err in granting Hobby Lobby's motion for summary judgment. See *Green v. Home Depot U.S.A.*, 277 Ga. App. 779, 781 (1) (a) (627 SE2d 836) (2006) (no evidence that store owner had

10

constructive knowledge of hazard posed by boxes on shelves where there was no evidence that boxes had previously fallen or that the boxes were stacked precariously, and defendant showed that it had a reasonable inspection procedure); *Metts v. Wal-Mart Stores*, 269 Ga. App. 366, 367 (604 SE2d 235) (2004) (proprietor entitled to summary judgment on plaintiff's claims for injuries arising out of boxes falling off store shelves; plaintiff failed to show that boxes were stacked in a hazardous manner and proprietor showed that it had restocked and inspected the shelves 15 minutes prior to the incident).

*Judgment affirmed. Ray, J., concurs, and Miller, P. J., concurs in judgment only.*

11