**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 19, 2015**

# In the Court of Appeals of Georgia

A14A2268. CPF INVESTMENTS, LLLP v. FULTON COUNTY
    BOARD OF ASSESSORS.

BRANCH, Judge.

This interlocutory appeal arises out of dispute between CPF Investments, LLLP ("CPF") and the Fulton County Board of Assessors ("the Board") over the Board's valuation of certain real property owned by CPF. CPF purchased the property in 2011 from the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and CPF contends that OCGA § 48-5-2 (3)[1] requires the Board to value the property at its 2011 sale price for the 2012 tax year. CPF moved for summary judgment on this issue in the court below and the Board opposed that motion. The Board argued that OCGA

---

[1] This code section provides in part that for tax appraisal purposes, "the transaction amount of the most recent arm's length, bona fide sale [of a property] in any year shall be the maximum allowable fair market value [of that property] for the next taxable year."

§ 48-5-2 (3) does not apply to sales involving government agencies because such entities are obligated to act in the best interests of their constituents, rather than in the best interests of the entities themselves. Thus, sales involving government agencies cannot meet the statutory definition of an arm's length, bona fide transaction, which requires that both parties to the transaction be acting in their own best interests. The Board further asserted that Freddie Mac constitutes a government agency.

The trial court agreed with the Board and denied CPF's motion for summary judgment. The court then certified its order for immediate review, and we granted CPF's application for an interlocutory appeal. For reasons explained below, we find that the trial court erred as a matter of law when it found that a tax authority may presume that any sale of property that involves a government agency is not an arm's length, bona fide transaction. Additionally, the record shows that the Board failed to come forward with any evidence supporting its assertion that the 2011 sale of the property by Freddie Mac was not an arm's length, bona fide transaction. Thus, regardless of whether Freddie Mac is a government agency, the trial court erred in denying CPF's summary judgment motion.

The facts in this case are undisputed and show that the property at issue is located in a residential subdivision and that a 5-bedroom house is situated on the land. On March 2, 2010, Chase Home Finance, LLC ("Chase"), purchased the

2

property for $271,735.[2] That same day, Chase sold the property to Freddie Mac for the price at which Chase had purchased it. In June 2010, Freddie Mac offered the property for sale with an asking price of $306,900. The property remained on the market for approximately seven months, until Glenn French, the general partner of CPF, purchased it from Freddie Mac for $207,000 in February 2011. On June 16, 2011, French executed a quitclaim deed transferring the property to CPF.

The Board appraised the property at $370,400 for the 2012 tax year. CPF appealed that valuation to the Board of Equalization ("BOE") asking that the appraisal be lowered to the 2011 purchase price. The BOE subsequently adjusted the appraisal to $340,000. The "Appraiser Notes" in the BOE file state that CFP "was asking for sales price of $207,000[,] which does not reflect the market in 2011. The sale was a Fannie Mae [sic] sale, which the county [does] not recognize. The BOE agreed with the county on a value of $340,000."

CPF appealed the BOE decision to the Fulton County Superior Court, seeking to have the appraised value of the property reduced to the 2011 sales price and asserting a claim for attorney fees. After the case had been pending for six months, CPF moved for summary judgment on the issue of valuation, asserting that under

---

[2] Chase acquired the property from an owner who had paid $420,000 for the property in June 2002. It therefore appears that Chase purchased the home at a foreclosure sale and Freddie Mac then bought the property from Chase.

3

OCGA § 48-5-2 (3) the valuation for the 2012 tax year could be no higher than the 2011 sale price of $207,000. In support of its motion, CPF submitted the affidavit of French, who stated that he was not and never had been "related to or affiliated with Freddie Mac," and that the 2011 sale was an arm's length transaction, entered into in good faith and without fraud or deceit. The Board opposed the motion, arguing that sales involving government agencies were presumed not to meet the definition of a bona fide sale under OCGA § 48-5-2 (3) and that Freddie Mac was a government agency. To support these assertions, the Board submitted the affidavit of Douglas Kirkpatrick, the Deputy Chief Appraiser of the residential division of the Fulton County Board of Tax Assessors. Kirkpatrick averred that "[b]ecause government agencies are not willing sellers acting out of self-interest, but acting in the interest of the public, the Tax Assessors' residential staff is trained that sales involving government agencies do not meet the definition of a bona fide sale"; that "[b]ased on its charter, purpose[,] and mission, [Freddie Mac] is acting in the interest of the United States' public, not in its own self-interest"; and that "[a]ccordingly, no sale from [Freddie Mac] is considered by the Tax Assessors as a bona fide sale." Kirkpatrick further indicated that the presumption that sales involving government entities were not bona fide sales was based on OCGA § 48-5-274, which provides a

4

formula for the State Auditor to use in formulating an adjusted property tax digest for each county.[3]

Relying on Kirkpatrick's affidavit, the trial court found that because "Freddie Mac is a government agency" the 2011 sale of the property did not qualify as an arm's length, bona fide sale under OCGA § 48-5-2 (3). The court further found that the sale did not reflect the fair market value of the subject property. Based on these findings, the court denied CPF's motion for summary judgment. This appeal followed.

Both in the trial court and on appeal, the parties have focused on the question of whether Freddie Mac is a government agency. That question, however, is relevant only if OCGA § 48-5-2 (3) authorizes the Board to treat property sales involving government agencies differently from all other property sales. We therefore begin our analysis by construing the relevant statutory language found in OCGA § 48-5-2.

"When we consider the meaning of a statute, 'we must presume that the General Assembly meant what it said and said what it meant.'" *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation omitted). Thus if the language of the statute is plain and unambiguous, we simply apply the statute as written. See

---

[3] The Board's reliance on OCGA § 48-5-274 is discussed more fully below.

*Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010);

*Frazier v. Southern R. Co.*, 200 Ga. 590, 593 (2) (37 SE2d 774) (1946) (when

construing the language of a statute, appellate courts "may not substitute by judicial

interpretation language of their own for the clear, unambiguous language of the

statute, so as to [change] the meaning").

> The first of the statutory provisions at issue, OCGA § 48-5-2 (3), provides:

> "Fair market value of property" means the amount a knowledgeable
> buyer would pay for the property and a willing seller would accept for
> the property at an arm's length, bona fide sale. The income approach, if
> data is available, shall be considered in determining the fair market
> value of income-producing property. *Notwithstanding any other
> provision of this chapter to the contrary*, the transaction amount of the
> most recent arm's length, bona fide sale in any year shall be the
> maximum allowable fair market value for the next taxable year.

(Emphasis supplied.)

The statute contains no language exempting sales involving government

agencies from the mandate found in the last sentence of this code section. Moreover,

the above-emphasized language makes clear that this mandate applies to all sales of

real property, regardless of the identity of the parties, provided such a transaction

constitutes an "arm's length, bona fide sale."[4] The definition of an "arm's length, bona fide sale" is found in OCGA § 48-5-2 (.1), which provides: "'[a]rm's length, bona fide sale' means a transaction which has occurred in good faith without fraud or deceit carried out by unrelated or unaffiliated parties, as by a willing buyer and a willing seller, each acting in his or her own self-interest, *including but not limited to a distress sale, short sale, bank sale, or sale at public auction*." (Emphasis supplied.)

The Board argues that any sale involving a government agency can never meet the statutory definition of an arm's length, bona fide sale "[b]ecause government[-]sponsored enterprises like [Freddie Mac] [do] not . . . act[ ] out of self-interest, but act[ ] in the interest of the public." To support this presumption, the Board relies on the portion of Title 48 that sets forth the State Auditor's duties in establishing adjusted property tax digests for each county. See OCGA § 48-5-274. That statute instructs the State Auditor to use the "Standard on Assessment-Ratio Studies published by the International Association of Assessing Officers" when establishing

---

[4] Additionally, the language of OCGA § 48-5-2 (3) makes clear that so long as the sale at issue was an arm's length, bona fide transaction, the Board may not assess the property at a higher value in the year following that sale, regardless of whether the Board believes the sale price reflects the actual fair market value of a property. Put another way, the Board may not engage in any determination of a property's actual fair market value for assessment purposes until the second year following that property's most recent sale resulting from an arm's length, bona fide transaction.

7

for each county the "ratio of assessed value to fair market value of county property" subject to taxation. OCGA § 48-5-274 (c). In his affidavit, Kirkpatrick stated that this Standard "provides that sales involving government agencies are generally invalid for the ratio studies used in mass appraisal tax assessments" and "specifically states that these 'types of sales are often found to be invalid for ratio studies and can be automatically excluded unless a larger sample size is needed and further research is conducted to determine that the sales are open market transactions." Citing OCGA § 48-5-274 and Kirkpatrick's affidavit, the Board contends that sales involving government agencies are excluded from "the ratio studies used in mass appraisals . . . because they do not reflect [sales] from a willing seller acting in its own self-interest." Thus, the Board concludes that it is authorized to presume that sales involving government agencies do not constitute arm's length, bona fide sales under OCGA § 45-5-2 (3). We find this argument wholly unpersuasive.

First, the Board offers no support for its assertion as to the reason that real estate transactions involving government agencies are excluded from property tax ratio studies. Although the Board cites to Kirkpatrick's affidavit to support this proposition, Kirkpatrick in fact offered no opinion as to the reasons underlying this asserted rule. Rather, he simply stated that the rule existed. Moreover, the Board fails to offer any reasoned argument or legal authority to explain why we should look to

8

OCGA § 48-5-274 (which deals with the duties of the State Auditor in formulating county tax digests) to interpret OCGA § 48-5-2 (which defines terms relevant to the ad valorem taxation of property by counties.) Accordingly, we must conclude that had the legislature intended to exempt transactions involving government agencies from the mandate of OCGA § 48-5-2 (3), then the legislature would have expressed that intent directly.[5] See *Six Flags Over Ga. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003) ("[w]here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden") (citation omitted).

In light of the foregoing, the sale at issue must be deemed an arm's length, bona fide sale unless the Board can offer some evidence that would support a finding

---

[5] We also find the Board's position – that the best interests of a governmental entity are not and can never be synonymous with the best interests of the public which that entity serves – to be not only cynical, but also contrary to our fundamental understanding of government. As our founding fathers expressed in the Declaration of Independence: "Governments are instituted among Men, deriving their just powers from the consent of the governed." See also The Federalist No. 62 (James Madison) ("A good Government implies two things: first, fidelity to the object of Government, which is the happiness of the People; secondly, a knowledge of the means by which that object can be best attained."); *McCulloch v. Maryland*, 17 U. S. 316, 404-405 (4 Wheat. 316, 4 LEd 579) (1819) ("The government of the Union, then . . . , is, emphatically and truly, a government of the people. In form and in substance it emanates from them. Its powers are granted by them, and are to be exercised directly on them, and for their benefit.") Given these principles, and in the absence of any evidence to the contrary, we must assume that when a government agency acts so as to fulfill its duty to advance the public interest it simultaneously advances its own interests.

that the transaction involved fraud or deceit; that there was some relationship or affiliation between Freddie Mac and French that predated the sale; or that Freddie Mac was, in fact, acting counter to its own best interests in order to benefit French. See OCGA § 48-5-311 (e) (4) (a county's "board of tax assessors shall have the burden of proving its opinions of value and the validity of its proposed assessment by a preponderance of evidence"). Moreover, as noted above, OCGA § 48-5-2 (.1) expressly defines an arm's length, bona fide sale to include those types of transactions where the seller might suffer a financial loss (including distress sales, short sales, bank sales, or sales at public auction). Thus, the mere fact that Freddie Mac suffered a financial loss as a result of the sale is insufficient to show that Freddie Mac was not acting in its best interests.[6]

Here, because the Board bore the burden of proving that Freddie Mac's sale of the property to French was not an arm's length, bona fide sale, CPF was entitled to summary judgment if the record showed either an absence of evidence supporting the Board's position or affirmative proof that contradicted that position – i.e., proof that the sale was an arm's length, bona fide transaction. See *Warner v. Hobby Lobby*

---

[6] There could be many reasons why a seller would view such as sale as being in the seller's best interest.

*Stores*, 321 Ga. App. 121 (741 SE2d 270) (2013). CPF came forward with affirmative evidence, in the form of French's affidavit, that the purchase of the property constituted an arm's length, bona fide transaction. To defeat CPF's summary judgment motion, therefore, the Board was required to come forward with some evidence that disputed French's affidavit and supported the Board's case. Id. Instead, the Board offered only its unfounded presumption that as a government agency, Freddie Mac could never act in its own best interest.[7] Accordingly, CPF was entitled to judgment as a matter of law.

In light of the foregoing, the order of the trial court denying CPF's summary judgment motion is reversed. The case is remanded for entry of judgment in favor of CPF and for consideration of CPF's claim for attorney fees.

*Judgment reversed and case remanded with direction. Barnes, P. J., and Boggs, J., concur.*

---

[7] Again, for purposes of this appeal, we have merely assumed that Freddie Mac is a government agency; we have not decided that issue.