**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 12, 2015**

# In the Court of Appeals of Georgia

A15A1128. SCHICK v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA.

MCMILLIAN, Judge.

David Schick appeals from the final order of the trial court entered after a bench trial on his suit against the Board of Regents of the University System of Georgia ("Board") seeking injunctive relief, penalties, and an award of attorney fees based on the alleged failure to comply with the provisions of Georgia's Open Records Act ("Act"), OCGA § 50-18-70 et seq., in responding to two open record requests Schick submitted to the Board and Georgia Perimeter College ("GPC")[1] in July 2012.

---

[1] GPC is not a separate legal entity from the Board and, accordingly, cannot sue or be sued. See *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, n.1 (630 SE2d 85) (2006).

As more fully set forth below, we now reverse the trial court's order in part and remand for further proceedings consistent with this opinion.

We decide the issues raised in this appeal under the following standard of review.

> In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. The standard by which findings of fact are reviewed is the "any evidence" rule, under which a finding by the trial court supported by any evidence must be upheld.

(Citations and punctuation omitted.) *Singh v. Hammond*, 292 Ga. 579, 581 (2) (740 SE2d 126) (2013). However, we apply a de novo standard of review to any questions of law decided by the trial court. *Memar v. Jebraeilli*, 303 Ga. App. 557, 558 (694 SE2d 172) (2010).

Viewed in this light, the record, including the trial transcripts and exhibits, shows the following. In May 2012, information was disseminated to the public concerning a $25 million budget shortfall at GPC, which appeared to precipitate the resignation of GPC's president and the decision to lay-off 282 full and part-time GPC

2

faculty and staff. On July 16, 2012, Schick, who at that time was the editor-in-chief of GPC's student-run newspaper, The Collegian, submitted an open records request to GPC seeking the production of "any and all documents and/or communication, including emails, produced during the decision-making process of the 282 lay offs at [GPC]" ("July 16 request"). On July 19, 2012, Amanda Reddick, GPC's Human Resources Director for Affirmative Action Compliance and Open Records, informed Schick that it would cost approximately $927.99 to search, retrieve, and redact the requested records, and that she could not begin processing his request until an outstanding balance from a previous request by The Collegian had been paid. It is undisputed that the estimated costs were not paid[2] and that GPC never produced any documents in response to the July 16 request.

On July 18, 2012, Schick submitted a different open records request to the Board ("July 18 request"). The July 18 request contained 15 numbered items, consisting primarily of requests for "any" or "all" communications between or to various Board and GPC employees during a specified time period, which ranged from

---

[2] Pursuant to OCGA § 50-18-71 (d), an agency may require prepayment if the estimated costs for production of the requested records exceeds $500.

3

a few months to approximately six years.[3] That same day, John Millsaps, the Board's Associate Vice Chancellor for Media and Publications, contacted Schick to seek clarification concerning the requested documents and to express his concerns about the breadth of the request and the time and costs associated with responding to such a broad request. However, Schick informed Millsaps that he did not wish to modify or narrow his request.

On July 23, 2012, Brenda Trezvant, Millsaps' administrative assistant, notified Schick that it would cost approximately $2,536.29 to fulfill his request, cautioning him that this estimate was "conservative." She also informed Schick that it would take approximately two weeks to search, retrieve, and review the documents responsive to his requests and that he needed to direct certain requests to GPC because the Board did not have email accounts for some of the GPC staff and employees listed in the requests. Schick testified that he was "shocked" by this estimate, and on August 3, 2012, Schick sent Trezvant an email requesting an itemized list of costs. Trezvant replied that same day with a breakdown, which indicated that some of the costs were associated with review for "extraction because of an open investigation." However,

_____

[3] Schick also requested the minutes from a meeting held on May 9, 2012, and a specified PowerPoint presentation.

4

Trezvant's response did not contain a citation to any statutory exemption which might authorize the Board to withhold any of the requested documents, as required by OCGA § 50-18-71 (d).

Schick continued to question the accuracy of the cost estimate, and the Executive Director of the national Student Press Law Center sent correspondence on his behalf requesting that the Board reassess the costs associated with producing the requested documents. The Board agreed to eliminate some of the review costs, and on September 6, 2012, the Board notified Schick that it had revised the estimate downward to $1882.98. However, Schick remained convinced that the Board's cost estimate was too high, and on September 24, 2012, he sent Millsaps an email directing him to "hold off" on the July 18 request and proceed with a new request for information related to the calculation of costs for previous open records requests. Ultimately, however, Schick obtained the assistance of his present counsel to assist him in negotiating the costs, and on October 24, 2012, the Board notified Schick that it would eliminate the review costs and produce the requested materials for a total cost of $291.

The Board then began to retrieve, review, and redact the documents responsive to the July 18 request. Because of the volume of documents that were retrieved in

5

response to Schick's request, the Board decided to set up the review process on a "rolling" basis. Under this method, the documents were passed through the chain of review in a piecemeal fashion, with the first person in the chain passing along documents in batches as they completed their review instead of any one person reviewing the entire set of documents before delivering them to another person in the review process. According to Millsaps, this allowed for an on-going, and presumably faster, production of documents to Schick, although there was a greater potential for documents to be misplaced. Further, although it appears undisputed that the primary purpose of the review was to redact protected information and to identify documents that were possibly subject to exemption, the Board continued to review the documents without notifying Schick of any statutory or other basis upon which they were relying to withhold documents from disclosure.

The first set of documents, which consisted of approximately 3651 pages, was produced to Schick on December 6, 2012, and the second set of documents was produced to Schick on February 22, 2013. At that point, Schick had been provided with approximately 12,195 pages of responsive documents, and Millsaps notified Schick that the Board's response to his July 18 request was now complete and sent him an invoice for the search and retrieval fees. However, Schick did not believe that

all the documents responsive to his request had been produced, and he continued to contact the Board and Millsaps in particular to inquire about the "missing" documents. Although Millsaps assured Schick that the Board's response was complete, on June 10, 2013, Schick filed the present suit against the Board seeking, inter alia, production of any documents responsive to his request that the Board had not yet produced. The Board filed an answer to Schick's complaint, citing for the first time OCGA § 50-18-72, and in particular OCGA § 50-18-72 (a) (4), as the basis for redacting or withholding from disclosure certain of the requested documents. Approximately two months later, on August 5, 2013, the Board sent Schick a CD containing 713 pages of previously undisclosed documents, which had recently been discovered.

Following a three-day bench trial, the trial court entered an extensive order finding, among other things,[4] that the Board had violated the Act by failing to designate the specific exemptions upon which it relied in withholding documents from disclosure as required by OCGA § 50-18-71 (d) and assessed a $1000 civil penalty against the Board based on this violation. However, the trial court went on

[4] The trial court also found that GPC had failed to comply with the Act by failing to provide a timeline in response to Schick's July 16 request, but that portion of the trial court's order is not at issue in this appeal.

7

to find that the Board was entitled to withhold documents under OCGA § 50-18-72 (a) (4) and conducted an in-camera inspection to determine if any responsive documents continued to qualify for exemption under that section. The trial court also found that the Board's belated production of the 713 pages of documents in August 2013 was a violation of the Act, but declined to award attorney fees based on this or any other violation. Schick now challenges the trial court's order to the extent the trial court found that the Board was entitled to withhold certain documents under OCGA § 50-18-72 (a) (4) and by failing to award him attorney fees. As more fully set forth below, we agree with Schick that the trial court erred by finding that the OCGA § 50-18-72 (a) (4) applies here and, in light of this holding, find it necessary to remand this case to the trial court to reconsider whether Schick is entitled to an award of attorney fees under OCGA § 50-18-73 (b).

1. In related arguments, Schick first contends the trial court erred by finding that the Board was entitled to withhold certain responsive records from disclosure based on the "pending investigation" exemption contained in OCGA § 50-18-72 (a) (4).

We begin our analysis by reviewing the statutory framework of the Open Records Act. Our General Assembly has expressly declared that "public access to

8

public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions." OCGA 50-18-70 (a). To further this end, all public records are deemed subject to disclosure, "except those which by order of a court of this state or by law are specifically exempted from disclosure." OCGA § 50-18-71 (a). Accordingly, the legislature has further directed that the Act be "broadly construed to allow the inspection of government records," OCGA § 50-18-70 (a), while the exceptions to disclosure "shall be interpreted narrowly to exclude only those portions of records addressed by such exception." Id.; see also OCGA § 50-18-71 (a); *City of Atlanta v. Corey Entertainment, Inc.*, 278 Ga. 474, 476 (1) (604 SE2d 140) (2004). The Act is designed to make the production of records expeditious, and the responding agency[5] is required to produce all records responsive to the request within a reasonable amount of time, "not to exceed three business days of receipt of a request." OCGA § 50-18-71 (b) (1) (A). And if any, or any part, of the requested records are withheld from disclosure, "the agency shall notify the requester of the specific legal authority exempting the requested record or records from disclosure by

_____

[5] "Agency" and "public record" as used in the Act are defined in OCGA § 50-18-70 (b) (1) and (2), respectively.

9

Code section, subsection, and paragraph within a reasonable amount of time not to exceed three business days . . ." OCGA § 50-18-71 (d).

The exemption at issue in this case is contained in subsection OCGA § 50-18-72 (a) (4),[6] and exempts:

> *Records of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity,* other than initial police arrest reports and initial incident reports; provided, however, that an investigation or prosecution shall no longer be deemed to be pending when all direct litigation involving such investigation and prosecution has become final or otherwise terminated; and provided, further, that this paragraph shall not apply to records in the possession of an agency that is the subject of the pending investigation or prosecution[.]

(Emphasis supplied.) In its order, the trial court questioned whether the Board fits within the definition of "law enforcement, prosecution, or regulatory" agency, but

---

[6] We note that after Schick filed his complaint, the Board also invoked the exemption set out in OCGA § 50-18-72 (a) (8), which exempts records obtained in investigations related to the suspension, firing or investigation of complaints against public employees, but he does not appear to challenge the Board's right to invoke that exception. Likewise, although the Board states in its brief in support of its motion for summary judgment that "a few documents were withheld pursuant to the exemptions contained in OCGA § 50-18-72 (a) (11) and (20)," which pertain, respectively, to records containing certain employment information and personal information, Schick does not challenge the Board's failure to disclose based on those exceptions.

10

went on to hold "that because of the Board's unique situation and wise use of resources, the Board may avail itself of the exemption – at least as long as the investigations at issue remain pending." On appeal, the Board appears to abandon any argument that it should be classified as a law enforcement, prosecutorial or regulatory agency,[7] contending instead that the Board is entitled to invoke the exemption when it has "gathered and/or created" documents that are part of an investigation that involves criminal conduct. Thus, the Board argues, "as long as [it] asserts the exemption only with regard to documents relating to an ongoing criminal investigation in which the Board is *working in cooperation with a 'law enforcement agency,'* the exemption should apply to any documents in the Board's custody while the criminal investigation is pending." (Emphasis supplied.)

Accordingly, we turn first to the text of OCGA § 50-18-72 (a) (4) to determine its scope.

> When we consider the meaning of a statute, we must presume that the
> General Assembly meant what it said and said what it meant. To that

---

[7] Although we will confine ourselves to the issues briefed by the parties, we note that under a similar statute, OCGA § 50-14-1 et seq., our Supreme Court has held that a coroner is not a law enforcement agency as that term is used in the "excluded proceedings" provision of Georgia's Open Meetings Act. *Kilgore v. R. W. Page Corp.*, 261 Ga. 410, 411 (2) (405 SE2d 655) (1991); OCGA § 50-14-3.

end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language. Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-73 (1) (a) (751 SE2d 337) (2013).

There appears to be nothing ambiguous, and the Board does not suggest otherwise, about the phrase "records of" as used in subsection (a) (4). But the Board's reading of the statute requires us to change the obvious meaning of "records of" to a more expansive "records compiled or created in connection with," or "records related or pertaining to," instead of what the statute says. "[A] statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation." (Citations and punctuation omitted.) *Lakeview Behavioral Health Sys., LLC v. UHS Peachford, LP,* 321 Ga. App. 820, 822 (1) (743 SE2d 492) (2013). *Gordon v. Atlanta Cas. Co.*, 279 Ga. 148, 149 (611 SE2d 24) (2005) (we should

12

never "by construction add to, take from, or vary the meaning of unambiguous words in the statute").

Further, the Board's construction ignores that the legislature also enacted a separate exemption applicable to *"records compiled for law enforcement or prosecution purposes.*"[8] (Emphasis supplied.) OCGA § 50-18-72 (a) (3). Thus, reading these subsections, which appear in the same code section and concern very similar subject matter, in pari materia, it is clear that the legislature intended to provide for two different exemptions related generally to law enforcement or prosecution activities: one that broadly applies to any public agency but limits the exemption to investigative or prosecutorial documents "to the extent" those documents meet other criteria (subsection (a) (3)) and one that applies to only specified public agencies but includes a broader category of documents (subsection (a) (4)). "[I]n particular, statutes 'in pari materia', i.e., statutes relating to the same subject matter, must be construed together." (Citation and punctuation omitted). *U.S.*

_____

[8] It does not appear that the Board has asserted that any of the documents at issue would be exempt under subsection (a) (3), which is limited to documents that are "reasonably likely to disclose the identity of a confidential source, disclose confidential investigative or prosecution material which would endanger the life or physical safety of any person or persons, or disclose the existence of a confidential surveillance or investigation[.]" OCGA § 50-18-72 (a) (3).

*Bank N. A. v. Gordon*, 289 Ga. 12, 15 (4) (709 SE2d 258) (2011). As a fundamental

principle of statutory construction, we "endeavor to give each part of the statute

meaning and avoid constructions that make some language mere surplusage or

meaningless." *Aimwell, Inc. v. McLendon Enterprises, Inc.,* 318 Ga. App. 394, 397

(1) (734 SE2d 84) (2012). Moreover, "courts should always strive to give effect to the

purpose and intent of the legislature," *Parker v. Lee*, 259 Ga. 195, 198 (4) (378 SE2d

677) (1989), and this is particularly true "in the instant case, [where] we have a

specific admonition by the General Assembly to construe OCGA § 50-18-72 (a) (4)

narrowly." Id. Indeed, our Supreme Court has stated that "*any* purported exemption

from disclosure under the Open Records Act must be narrowly construed." (Emphasis

in original.) *Hardaway Co. v. Rives,* 262 Ga. 631, 634 (2) (422 SE2d 854) (1992). See

also *Bd. of Regents of the Univ. Sys. of Ga. v. Atlanta Journal & Const.,* 259 Ga. 214,

215 (2) (378 SE2d 305) (1989). The Board's expansive reading of the OCGA § 50-

18-72 (a) (4) is directly contrary to this directive and contravenes the legislative intent

as expressed in the Act that it should be construed in favor, not against, disclosure.[9]

_____

[9] Although the Board cites the need to protect privacy interests and the integrity
of criminal investigations as compelling reasons to adopt the Board's construction of
the statute, the Board ignores that the legislature has already addressed these concerns
by enacting OCGA §§ 50-18-72 (a) (3) and (a) (8). Moreover, even if we recognized
the salutary effect of the Board's construction, we do not have the authority to rewrite

14

For all these reasons, we conclude that the trial court erred by finding the Board could rely on the exemption from disclosure contained in OCGA § 50-18-72 (a) (4) to withhold certain requested records.[10] Accordingly, we reverse the holding of the trial court and remand with direction that the Board disclose all records that it continues to withhold solely on the basis of exemption contained in OCGA § 50-18-72 (a) (4). However, we would also make clear that the trial court may conduct further in-camera proceedings to determine if any of the withheld records may be exempt from disclosure under another provision of the Act invoked by the Board.

2. Schick also argues that the trial court erred by refusing to award attorney fees pursuant to OCGA § 50-18-73 (b) based on the Board's multiple violations of the Act, which he contends were without substantial justification. That section provides:

> In any action brought to enforce the provisions of this chapter in which the court determines that either party acted without substantial justification either in not complying with this chapter or in instituting

the statute. *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006).

[10] We do not know the exact number of documents that were originally or continue to be withheld, although the trial court indicated that most of the requested documents have, or would be disclosed because the investigations were no longer "pending."

15

the litigation, the court shall, unless it finds that special circumstances exist, assess in favor of the complaining party reasonable attorney's fees and other litigation costs reasonably incurred. Whether the position of the complaining party was substantially justified shall be determined on the basis of the record as a whole which is made in the proceeding for which fees and other expenses are sought.

Although the trial court has determined that the Board violated several provisions of the Act in responding to Schick's July 18 request, Schick is only entitled to attorney fees if he also shows that the Board's failure to comply with the Act was without substantial justification. *Wallace v. Green County*, 274 Ga. App. 776, 781(2) (618 SE2d 642) (2005) ("if a violation of the [Act] did in fact occur, [the plaintiff] must show that the [responding agency] lacking substantial justification for the violation") (citation and punctuation omitted). Schick contends on appeal that the trial court erred by finding that the Board's late production of certain documents was substantially justified, pointing out that the Board failed to show exactly why or where those documents went missing or any of the circumstances surrounding their discovery. But the statute directs that the issue of substantial justification "be determined on the basis of the record as a whole." OCGA § 50-18-73 (b).

16

Here, the trial court, following a three-day bench trial, noted that the late production consisted of less than six percent of the total number of records produced and determined that there was no evidence these documents were singled out for delay or otherwise intentionally withheld. Further, the evidence supports the trial court's findings that the members of the Board and employees who were involved in the review process worked diligently to fulfill Schick's request and that they worked nights or during the holidays as necessary in order to meet their normal work responsibilities and respond expeditiously to Schick's request. In light of this and the other surrounding circumstances, we find that there was ample evidence to support the trial court's factual findings and thus the trial court did not abuse its discretion in refusing to award Schick attorney fees based on the Board's belated production of 713 pages of records. *Everett v. Rast*, 272 Ga. App. 636, 636 (612 SE2d 925) (2005) ("[t]he standard of appellate review is whether the trial court abused its discretion in failing to award attorney fees and expenses of litigation").

However, that does not end our consideration of the attorney fees issue. Because we have determined that the trial court erred by allowing the Board to withhold documents under the exemption contained in OCGA § 50-18-72 (a) (4), we must also remand this case for the trial court to consider whether Schick is entitled

17

to attorney fees based on the Board's failure to disclose certain documents based on that exemption.[11]

*Judgment affirmed in part, reversed in part and case remanded with direction.*

*Barnes, P. J., and Ray, J., concur.*

---

[11] Again, however, we stress that the Board has also invoked other exemptions, and Schick would not be entitled to attorney fees based on the failure to disclose any documents that were properly withheld pursuant to other exemptions.