McFadden, Chief Judge, dissenting.
The question before us is whether "every state office" means every state office. The majority holds that it does not. So I respectfully dissent.
The majority compounds its error by addressing a question not before us. Appellant does not contend that the General Assembly itself is subject to the Open Records Act, *798 only its offices. Open Records Act imposes a duty to produce records upon "agencies." OCGA § 50-18-71 (b) (1) (A). "Agencies" is a defined term. The Open Records Act incorporates the definition of "agency" set out in the Open Meetings Act. OCGA § 50-18-70 (b) (1). Under that definition, "agency" means, in pertinent part, "Every state department, agency, board, bureau, office , commission, public corporation, and authority[.]" OCGA § 50-14-1 (a) (1) (A) (emphasis added). So the question before us, stated more precisely, is whether "every state office" includes legislative offices. I would hold the answer to be self evident. It does.
The majority finds a warrant to hold otherwise in two decisions handed down by our Supreme Court in the 1970s, Harrison Co. v. Code Revision Commission , 244 Ga. 325, 260 S.E.2d 30 (1979) and Coggin v. Davey , 233 Ga. 407, 211 S.E.2d 708 (1975).
Harrison discussed a codified rule of statutory construction, which is now at OCGA § 1-3-8. Under OCGA § 1-3-8, "The state is not bound by the passage of a law unless it is named therein or unless the words of the law are so plain, clear, and unmistakable as to leave no doubt as to the intention of the General Assembly." Citing Coggin , to which I'll turn shortly, Harrison expanded on that statutory language and held: "By the same token, the General Assembly, including its committees, commissions and offices, is not subject to a law unless named therein or the intent that it be included be clear and unmistakable." Harrison , 244 Ga. at 328 (1), 260 S.E.2d 30.
I would hold that the words "every state office" are "clear and unmistakable" on their face.
But if we need other guides to help us discern the meaning of those words, we have them. In the Open Records Act itself the General Assembly directed that it be broadly construed to allow access to government records.
The General Assembly finds and declares that the strong public policy of this state is in favor of open government ; that open government is essential to a free, open, and democratic society; and that public access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions. The General Assembly further finds and declares that there is a strong presumption that public records should be made available for public inspection without delay. This article shall be broadly construed to allow the inspection of governmental records. The exceptions set forth in this article, together with any other exception located elsewhere in the Code, shall be interpreted narrowly to exclude only those portions of records addressed by such exception.
OCGA § 50-18-70 (a) (emphasis added). "[C]ourts should always strive to give effect to the purpose and intent of the legislature, and this is particularly true in the instant case, where we have a specific admonition by the General Assembly to construe [the Open Records Act broadly]." Schick v. Bd. of Regents of the Univ. Sys. of Ga. , 334 Ga. App. 425, 434 (1), 779 S.E.2d 452 (2015) (citations and punctuation omitted). The majority's narrow reading of the Act to prohibit inspection of the records requested from state offices "contravenes the legislative intent as expressed in the Act that it should be construed in favor of, not against, disclosure." Id. (footnote omitted).
More broadly, "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. Thus if the language of the statute is plain and unambiguous, we simply apply the statute as written." CPF Investments, LLLP v. Fulton Bd. of Assessors , 330 Ga. App. 744, 746, 769 S.E.2d 159 (2015) (citations and punctuation omitted). See also OCGA § 1-3-1 (b) (directing the application of ordinary signification to all words in statutes). Moreover, as used in the Georgia Code, "defined words shall have the meanings specified, unless the context in *799 which the word or term is used clearly requires that a different meaning be used." OCGA § 1-3-2.
The majority also relies heavily on Coggin , supra. But the issue in that case was "the applicability of Georgia's 'Sunshine Law' to the General Assembly and its committees." Coggin , 233 Ga. 407, 211 S.E.2d 708. The Sunshine Law was the predecessor to the statutes before us today, the Open Records Act and the Open Meetings Act. But the issue before us today is the applicability of the current version of the Open Records Act to legislative offices. And the statutory language extending that Act to every state office was enacted in 2012, long after Coggin was handed down. See editor's notes on the 2012 amendment to OCGA § 50-14-1 (a) (1).
There is no language in the Open Records Act extending it to the General Assembly itself. The majority would elide the distinction between legislative offices and the General Assembly itself. But state offices do not compose the General Assembly. See generally Ga. Const. of 1983, Art. III, Sec. I, Par. I & Art. III, Sec. II, Pars. I-V & Art. III, Sec. VI, Par. I (General Assembly consists of the Senate and House of Representatives, which are composed of their elected members, who have the power to make all laws for the welfare of the state); OCGA § 28-1-1 (describing membership of General Assembly). See also OCGA §§ 28-3-20 (Secretary of the Senate and Clerk of the House of Representatives and their terms of office); 28-4-3 (creating Office of Legislative Counsel); 28-5-6 (authorizing establishment of Senate Budget and Evaluation Office and House Budget and Research Office).
Also unsupportable is the majority's invocation - in reliance on dicta in Coggin - of the General Assembly's rule making authority. "[T]he statement in the [ Coggin ] majority opinion that either the House or the Senate can pass an internal operating rule for its own procedures in conflict with a general law enacted by both bodies and signed by the Governor ... is dictum and not necessary to a decision in this case." Coggin , 233 Ga. at 411, 211 S.E.2d 708 (Ingram and Hall, JJ., concurring specially).
That the already clear and unmistakable meaning of "every state office" encompasses legislative offices is rendered crystalline by OCGA § 28-4-3.1. Under that provision communications between the Office of Legislative Counsel and specified persons, including members of the General Assembly, "shall not be subject to inspection or disclosure under Article 4 of Chapter 18 of Title 50 [the Open Records Act] or any other law or under judicial process[.]" By construing the Open Records Act to be inapplicable to legislative offices - including the Office of Legislative Counsel - the majority reduces that statutory language to meaningless surplusage. "As a fundamental principle of statutory construction, we endeavor to give each part of the statute meaning and avoid constructions that make some language mere surplusage or meaningless." Schick , supra. at 432 (1), 779 S.E.2d 452. It is of no consequence that the majority opinion leaves unaffected other portions of OCGA § 28-4-3.1.
There is, of course, no separation of powers problem when the General Assembly legislates about itself or its offices. The General Assembly has the authority decide whether to subject itself or its offices to the Open Records Act. The clear and unmistakable language of the statutes before us does subject legislative offices to the Act. So we should reverse.